STATE ex Rel. HOATSON, Relatrix, v. DISTRICT COURT ET AL., Respondents.

(No. 7,193.)

(Submitted October 7, 1933. Decided October 13, 1933.)

[26 Pac. (2d) 172.]

*Messrs. Murch & Wuerthner*, for Relatrix; *Mr. Julius J. Wuerthner* argued the cause orally.

No appearance on behalf of Respondents.

Opinion: PER CURIAM.

This proceeding was instituted in this court by the relatrix to have annulled an order of the district court of Yellowstone

county committing her to the state insane asylum. She alleges that she is a duly licensed registered nurse, having practiced her profession as such in the city of Billings for more than nineteen years immediately preceding the order of the court sought to be reviewed, and that on February 15, 1933, she was committed to the state insane asylum by an order which was and is illegal and void and in excess of the jurisdiction of the court making the same.

In her affidavit relatrix alleges that the order of commitment was procured by her husband and brother-in-law as a result of a conspiracy between them; that she was never arrested, never brought before the court, and was induced to leave the city of her residence, Billings; upon the false representations made by her brother-in-law, who was one of the physicians before whom the alleged hearing was had, that he had procured for her a position in the line of her profession at the Veterans' Hospital at Fort Harrison, and that he had arranged with Mrs. Illen, a registered nurse, to accompany the relatrix to the Veterans' Hospital; and that relatrix did not know anything to the contrary until she was delivered to the authorities at the state insane asylum at Warm Springs, where she was forcibly detained and restrained of her liberty, although perfectly sane, and kept until August 16, 1933, when she was released therefrom on her parole.

Attached to the affidavit certain papers appear: Copy of complaint made by her husband, praying that a warrant issue for the arrest of relatrix, and that she be taken before the judge of the district court for examination; a warrant of arrest signed by the judge of the court, with the certificate of the sheriff "that he received the warrant on the 15th day of February and executed the same by arresting the within named defendant and bringing ——— into court," the words "and bringing ——— into court" being stricken out as indicated; a certificate of two physicians; and order of confinement signed by the judge of the court. From the order it appeared that the physicians who signed the certificate also

acted as the witnesses examined respecting the sanity of relatrix.

The writ of certiorari prayed for by the relatrix having been issued and served upon the respondents, a duly certified return thereto was filed, as required by this court.

It appears from the register of actions in the matter of the examination into the sanity of Marie Ackerman Hoatson that the entire proceeding which is complained of by relatrix was effected on the fifteenth day of February, 1933, and all the papers were filed at 5 o'clock P. M. of that day. It does not appear from the register of actions that any subpoenas were issued for anyone.

In Minute Book No. 7, at page 165, the following appears: "The complaint of Jack Hoatson, husband of the above party, is duly filed and presented to the court this day, and said complaint comes on regularly for hearing before the court. Physicians E. M. Farr and W. R. Morrison are duly sworn and make examination, and witnesses Jack Hoatson and Dr. William R. Morrison are sworn and give testimony; the defendant Marie Ackerman Hoatson not appearing, as she is held under the influence of opiates. From testimony offered and proof submitted the court finds that the said Marie Ackerman Hoatson, to be insane, and now orders that she be confined in the insane asylum at Warm Springs, Montana, at private expense."

It appears from the certificate of the physicians that a sister of relatrix, Mrs. W. R. Morrison, was a resident of Billings, but she was not subpoenaed to appear. We have the anomalous situation of her brother-in-law acting as one of the examining physicians and as a witness.

Section 1431, Revised Codes 1921, provides that, "whenever it appears to the satisfaction of a magistrate of the county that any person within the county is so far disordered in his mind as to endanger health, person, or property, he must issue and deliver to some peace officer for service a warrant directing that such person be arrested and taken before any district judge in the county for examination," etc.

Sections 1432 and 1433 provide that, when the person is taken before the judge, that officer must issue subpoenas to two or more witnesses best acquainted with the person alleged to be insane to appear before him and testify, and the judge must also issue subpoenas for at least two graduates of medicine to appear and attend such examination.

Sections 1434 and 1435 provide that "at the examination the persons subpoenaed must appear and answer all questions pertinent to the matter under investigation," and "the physicians must hear such testimony, and must make a personal examination of the alleged insane person." Thereupon the physicians are required to make the certificate provided for in section 1436, and if the judge after the hearing before him, and after such examination and certificate are made, believes the person so far disordered in his mind as to endanger health, person or property, he must make an order committing the insane person to the state insane asylum. (Sec. 1438, Id.)

It is asserted that the statute under consideration is violative of the due process clause of the federal Constitution, and that, as the relatrix was not brought before the court for examination, she was denied her day in court.

Whether or not it is necessary in all such cases that the person alleged to be of unsound mind be personally present at the hearing, or, regardless of his or her mental and physical condition, be given notice of the hearing and an opportunity to defend, we need not here decide; but see *Simon* v. *Craft*, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1170.

Sections 1431, 1432 and 1433, above, demonstrate that the requirement that the person be taken before the district judge is for the purpose of arraignment, rather than for the hearing, as it is then that the subpoenas for witnesses and doctors are issued.

The fatal defect in the proceeding before us is found in the fact that the requirements of the statute were not met. The statute commands that at least two witnesses best acquainted with the person alleged to be insane be subpoenaed

and must testify, and also that two doctors be subpoenaed, who must "hear such testimony" and make a personal examination of the person and certify their professional conclusions, from the testimony and examination, to the judge. The voluntary appearance of the witnesses and the doctors may be sufficient, but at least substantial compliance with the statute is mandatory. (*In re Kane's Estate,* 12 Mont. 197, 29 Pac. 424.) "If there is any class of cases which should be conducted with the utmost care to observe all of the requirements of the statute, it is the cases conducted for the purpose of determining the sanity of a citizen." (*In re Wells' Estate,* 133 Or. 135, 289 Pac. 511, 512.) In determining whether the rights of the person under observation were denied, we are governed by the substance of things, and not by mere form. (*Simon* v. *Craft,* above.)

Here, it is true, the record shows that two witnesses testified and two doctors certified, but one of the doctors testified and then presumed to weigh his own testimony. This may be formal compliance with the letter of the statute, but it violates the spirit and intent and purpose of the Act.

We do not mean to say that a doctor who has knowledge of the condition of the patient is thereby rendered disqualified to act on the commission of physicians, but the statute requires the attendance of two physicians to hear the evidence of the witnesses and examine the person alleged to be insane, and from the evidence and examination to determine the matter and certify their findings to the court; the hearing thus required is in the nature of a jury trial before a jury of experts who are much more likely to reach a correct verdict than would a jury of laymen. (*Grinky* v. *Wayne Probate Judge,* 137 Mich. 49, 100 N. W. 171.) The jurors, whether the regular lay jury or a commission of experts, are the judges of the facts, the effect of the evidence, and the credibility of the witnesses. (Secs. 10698, 10672 and 10508, Rev. Codes 1921.) It is manifest that a physician who has just given expert testimony as to the mental condition of the person under examination is by that act disqualified from acting as a juror required

impartially to weigh and determine the effect of that evidence, and therefore that Dr. Morrison was disqualified from acting as one of the two doctors, required by the statute, to hear the evidence, examine the relatrix and certify their findings to the judge. We have, then, but one qualified doctor attending the examination; the statutory requirement that two such doctors hear the evidence, examine the person, and make the required certificate, is jurisdictional.

The order here attacked, based upon the certificate of but one qualified doctor, is void for failure to comply with the jurisdictional requirements of the statute.

Notwithstanding the fact that the relatrix was declared to ██ be an insane person, the circumstances considered, she has the right to bring this proceeding. (*In re Kane's Estate,* above; *State ex rel. Happel* v. *District Court,* 38 Mont. 166, 99 Pac. 291, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098; *Appeal of Barnett,* 122 Okl. 160, 252 Pac. 410; *Shapter* v. *Pillar,* 28 Colo. 209, 63 Pac. 302.)

The order of the district court of Yellowstone county declaring Marie Ackerman Hoatson an insane person, and that she be confined in the insane asylum at Warm Springs, Montana, is annulled.