STATE ex Rel. LEONIDAS, Relator, v. LARSON et al., Respondents.

(No. 7,919.)

(Submitted January 14, 1939. Resubmitted May 3, 1939. Decided July 14, 1939.)

[92 Pac. (2d) 774.]

Messrs. *Lester H. Loble, Hugh R. Adair* and *Melvin H. Magnuson*, for Relator, submitted an original and a supplemental brief; *Mr. Adair* and *Mr. Magnuson* arguing the cause at the original hearing, and *Mr. Adair* on rehearing.

*Mr. H. O. Vralsted*, for Respondents, submitted an original brief, and one on rehearing, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an application for a writ of certiorari to have annulled the proceedings of respondents wherein relator was adjudged insane, ordered to be confined to the State Hospital for the Insane, which proceedings were approved by the respondent district court by appropriate order. Prior to the filing of his application for this writ, relator was paroled and released from the hospital.

The hearing relative to relator's sanity was conducted by the respondent Larson, as chairman of the board of county commissioners, under the provisions of sections 1431 to 1443, both inclusive, of the Revised Codes. Section 1431 provides that whenever it appears to the satisfaction of a magistrate of a county that any person within the county is so far disordered in his mind as to endanger health, persons or property, he must

issue and deliver to some peace officer for service a warrant directing that such person be arrested and taken before a district judge, or, in the absence of a judge from the county, before the chairman of the board of county commissioners.

The certified transcript of the sanity proceedings discloses that by reason of a complaint filed, a justice of the peace of Judith Basin county issued a warrant of arrest, commanding that relator be brought before respondent to answer the charge contained in the complaint. There is no return of service made on the warrant of arrest, and there is no proof in the record that the warrant was ever served upon relator. The hearing on the complaint charging insanity of relator was held on the 10th day of June, 1938, which date both the complaint and warrant of arrest bear.

It appears from the record that the filing of the evidence reduced to writing, the orders, etc., with the clerk of the district court was delayed many months after the examination, and it does not appear that any transcript was made on the record of probate proceedings in the district court, as required by section 1443, supra. It also appears that the proceedings were not presented to the district judge at the first term following the commitment, as required by law, and that the approval of the district court was not had until the second term of court following the commitment of relator.

The petition for the writ was denied in an opinion filed on January 25, 1939; thereafter a petition for rehearing was presented by relator, which was granted and the cause resubmitted.

On the original hearing and in the petition for rehearing, relator raised many questions as to the constitutionality of section 1431, supra, and related sections. These questions are based on the theory that section 1431 fails to provide for due process, as provided in the Fourteenth Amendment to the Constitution of the United States, and in the constitutional provisions of this state. It is not necessary to pass on the constitutionality of the Act in these proceedings. Furthermore, since the Act has been amended to provide for notice, it is

not necessary for the guidance of the courts or the bar of the state to pass on the question.

This court, in an early case—*Territory ex rel. McCann* v. *Sheriff of Gallatin County,* 6 Mont. 297, 12 Pac. 662, 663— ▇ construing the original Insanity Act, noted that the proceedings are summary in nature, "but, providing as it does, for such summary proceedings, we must hold that it was the intention of the legislature that they should be strictly pursued,—that there should be a strict compliance with every requirement of the law. * * * In a law providing for proceedings of this summary character, the requirements are mandatory."

In a subsequent case—*In re Kane's Estate,* 12 Mont. 197, 29 Pac. 424, 425—this rule was recognized by the court, it saying: "The statute concerning the insane must receive a strict construction, and its requirements are mandatory."

In the present case, although a warrant for arrest was issued ▇ by the justice of the peace, there is no return on the warrant showing its service upon relator. Since the respondent county commissioner was sitting in a sanity matter as a tribunal of very limited powers, no presumption exists that his proceedings were regular, nor that he had jurisdiction to enter the judgment sought to be reviewed. (15 C. J. 832; 5 C. J. S., Appeal and Error, sec. 1536, p. 287; *Bullerdick* v. *Hermsmeyer,* 32 Mont. 541, 81 Pac. 334.) As was properly said in the case of *State ex rel. Thompson* v. *District Court,* 75 Mont. 147, 242 Pac. 959, 961, speaking of a tribunal acting with special and limited powers: "Its jurisdiction must appear on the record and cannot be presumed." It is true that the *Bullerdick* and *Thompson Cases* have been overruled as to the proposition that the district court sitting as a probate court is one of limited jurisdiction, but they have not been overruled as to the proposition herein stated. We cannot indulge in any presumption, by reason of relator's presence before the chairman of the board of county commissioners, that service of the warrant was had upon him as in section 1431, supra, provided. Service of the warrant must appear affirmatively in the record, and it does not so appear.

There are additional irregularities which constrain us to grant the writ. Section 1443 provides that the transcript of the proceedings, including the evidence reduced to writing, orders, etc., shall be filed in the office of the clerk of the district court of the proper county, and that the clerk shall enter upon the journal of the minutes of the probate proceedings a transcript of all proceedings had by the chairman of the board of county commissioners at the examination, and that it shall be the duty of the district judge at the *first* term of court after the examination to examine and approve the proceedings. From the record it appears that nothing was filed with the clerk of the district court until long after the examination, and no entry was made in the journal of the minutes of the probate proceedings, as in the Act required. Further, it appears that the matter was not called to the attention of the district judge until the second term of court after the examination.

The provisions of the statute are clear on all of these points, and noncompliance with these provisions was substantial.

In view of what this court said in the *McCann Case,* supra, we must hold that the respondent commissioner was without jurisdiction to make the order of commitment, and his order finding relator insane and committing him to Warm Springs is a nullity.

It is therefore ordered that the proceedings had before the respondent Larson be, and they are hereby, annulled.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE ANGSTMAN concur.

MR. JUSTICE STEWART:

I dissent. After the original argument I prepared for the court an opinion denying the application for the writ. After the opinion was promulgated, a rehearing was granted and a reargument occurred. I have reviewed the whole matter and I am convinced that the first opinion was correct. The statement of facts and the discussion of the points raised were more elaborate in the original opinion than in the present majority

opinion. Therefore, I incorporate the original opinion in this dissent. It was as follows:

"This proceeding was instituted by relator to have annulled an order of the chairman of the board of county commissioners of Judith Basin county, acting in the absence of the district judge, committing him to the State Hospital for the Insane at Warm Springs. In his petition he alleged that he is a citizen of the United States and a former employee of a railway company; that he was injured while working for the railway company, and that he obtained a judgment for damages on account of the injury; that on June 10, 1938, he was residing at Stanford in Judith Basin county; that on that date he was required to appear before the board of county commissioners and that he did so appear; that certain proceedings were had at that time; that no complaint, warrant or other notice was served on him to appear at a sanity inquest; that whatever testimony was taken relative to his sanity was without his presence or hearing; that he attended the hearing for the purpose of obtaining a relief allowance; that the examination made of him at that time related solely to subjects unrelated to his sanity; that the witnesses who testified with relation to his mental competency did not do so in his presence; that no proper processes were issued to require the presence of witnesses or physicians to attend the hearing; that after the hearing he was deceived by a purported telegram from the Governor requesting his presence at Helena; that instead of being taken to Helena by the sheriff of Judith Basin county, he was taken to the institution at Warm Springs and confined there for several months and until released on parole on November 21, 1938; that the pretended hearing and inquiry into his sanity were conducted before the chairman of the board of county commissioners of Judith Basin county, and that the action of the chairman was not approved by the district judge at the first term of court thereafter, and not until December 12, 1938; and that one of the physicians who sat as a member of the board of examining physicians, Dr. Dinsmore, was sworn and gave testimony as to the mental incompetency of relator.

"In response to the citation, the clerk of the district court made certificate of return which contained all of the papers and files in her office relating to the inquest and hearing, viz.: the complaint in the justice court, warrant of arrest, certificate of the justice of the peace, examination of witnesses, certificate of the physicians and order of confinement.

"The certificate of the clerk, in addition to certifying to the copies of the foregoing papers, set forth that as such official she did not keep, and there was not in her office, a register of the proceedings on insanity matters; that there was no transcript of any of the proceedings made or retained in her office except the papers themselves, with the exception 'that the order of commitment was recorded in the records of her office.' By the return of the clerk of the court, all of the papers and files connected with the inquest are before this court.

"In addition to the certificate of the clerk of the court, the respondents filed an answer merely setting forth that they were acting in this proceeding in an official capacity. The respondent Larson, chairman of the board of county commissioners, filed a certificate in his own behalf, reciting the presentation of the records and files, and detailing the facts and circumstances of the hearing.

"The matter now being before this court strictly upon the records certified from the district court, it is our province and duty to review such records and from them alone determine and decide the application. The affidavit itself becomes *functus officio*. The answer and the certificate of the respondent Larson, in so far as they attempt to add to the record, must be disregarded. (*State ex rel. First T. & S. Bank* v. *District Court*, 50 Mont. 259, 146 Pac. 539; *Shaffroth* v. *Lamere*, 104 Mont. 175, 66 Pac. (2d) 610; *State ex rel. Perry* v. *District Court*, 83 Mont. 377, 272 Pac. 553.)

"The proceeding occurred under the provisions of section 1431 et seq., Revised Codes, having to do with such matters. It provides that whenever it appears to the satisfaction of a magistrate of a county that any person within the county is so far

disordered in his mind as to endanger health, person or property, he must issue and deliver to some peace officer for service a warrant directing that such person be arrested and taken before a district judge, or, in the absence of a judge from the county, before the chairman of the board of county commissioners.

"Section 1432 provides that when the person is taken before the judge or chairman, he must issue subpoenas to two or more persons best acquainted with the insane person to appear and testify at such examination. Section 1433 provides that the judge or chairman must issue subpoenas for at least two graduates of medicine to appear and attend the examination. Section 1434 provides that the witnesses subpoenaed must appear and answer questions. Section 1435 provides that the physicians must hear such testimony and make a personal examination of the alleged insane person. Section 1436 provides that the physicians, after hearing the testimony and making the examination, must, if they believe such person dangerously insane, make a certificate in the form provided.

"Section 1437 provides that the certificates must be made in the form prescribed by, and if they can be had, upon blanks furnished by the board of commissioners of the insane. The succeeding sections provide for the order of commitment and delivery of the person charged to the asylum, in case the judge or chairman finds facts sufficient to warrant the same. Section 1438 vests the final determination of the matter in the judge or chairman.

"Section 1443 provides that whenever any insane person is examined and committed by a hearing had before the chairman of the board of county commissioners, it shall be the duty of the chairman to have all the evidence reduced to writing, and the same, together with all orders, subpoenas, complaints, warrants and papers used at such hearing, or made by the chairman of the board of county commissioners, filed in the office of the clerk of the district court, and that the clerk shall enter upon the journal of the minutes of probate proceedings a transcript of all pro-

ceedings had by the chairman, and that it shall be the duty of the district judge 'at the first term of court after such examination to examine and approve such proceedings or said insane inquest and committal, in the same manner as probate proceedings transacted by the clerk in vacation are approved; and in no case shall the finding of the chairman of the board of county commissioners be final. In all cases where hearings are had by the chairman of the board of county commissioners, the proceedings must be examined and certified and approved or rejected by the judge of the district court.'

"An examination of the return, to which the copies are attached, discloses the fact that all papers used at the hearing were in the possession of the clerk of the court, but that the clerk did not make the entries upon the journal of the minutes of probate proceedings as required by section 1443, and that the district judge did not examine and approve the same at the next term of court.

"The record shows that a complaint was filed in due form in a justice court; that the justice issued a warrant for the arrest and detention of relator, and that he did subsequently appear before the chairman of the board. The warrant issued for relator does not bear any return of the sheriff showing its service. This we consider unimportant because the record otherwise discloses that the defendant (relator) was present at the hearing either voluntarily or in response to the warrant, or at least at a part of it.

"The record also contains a subpoena issued by the chairman of the board for two doctors, Dinsmore and Freed, and for four witnesses. There is no return on its subpoena showing service of the same, but the record clearly discloses that at the time set for hearing, Drs. Dinsmore and Freed did appear and act as the examining physicians, and did make the required statutory certificate to that effect, and to the further effect that relator was unsafe to be at large in the community. The voluntary appearance of the witnesses and the doctors may be sufficient. (*State ex rel. Hoatson* v. *District Court*, 95 Mont. 174, 26 Pac. (2d) 172.)

"The record contains full copies of the certificate of the physicians and the order of confinement made by the chairman. Both of these records are in proper form and in conformity with the statutes. We do not deem it important that there should be returns attached to the subpoenas in view of the fact that the parties all appeared in apparent response to the subpoenas.

"The record also contains a copy of what was designated 'examination of witnesses.' This latter record contains testimony given by various witnesses and the record of the examination of relator himself.

"Upon the examination of the record, we are convinced that it is regular upon its face, and, while not in strict conformity with usual procedure, that it does substantially conform to the requirements of the statute.

"There are but three questions presented which we consider of vital importance; all of the others are, we think, unimportant. The three questions involve the following propositions: (a) Was the whole proceeding rendered invalid by reason of the failure of the clerk to make the proper entries in the journal of the minutes of probate proceedings, as required by section 1443, Revised Codes? (b) Was the proceeding rendered invalid by reason of the failure of the district judge to approve or reject the same at the first term of court after the examination? (c) Was the proceeding rendered invalid by reason of the fact that Dr. Dinsmore, one of the examining physicians, was called as a witness and testified as to the condition of relator?

"While there was a dereliction of duty on the part of the clerk of the court in the matter of making the proper entries in the minutes of the probate proceedings, we do not believe that such failure was in anywise fatal. In this particular we are guided by what the Supreme Court of the United States said in the case of *Simon* v. *Craft*, 182 U. S. 427, 21 Sup. Ct. 836 [839], 45 L. Ed. 1165, 1170, wherein the following language was employed: 'In determining whether such rights [of the persons under observation] were denied we are governed by the substance of things, and not by mere form.' The failure of the clerk was a dereliction of official duty on her part, but it did

not go to the substance of the matter, and, therefore, is not fatal to the proceeding.

"It is true that the statute does impose upon the district judge the duty of examining the proceedings and of passing upon them at the next term of court. This the judge did not do, but before the institution of the present proceeding the judge did make such examination and did certify that after examination he approved them. This approval is shown by the minutes of the court.

"We think that by analogy what was said in the case of *Chicago, Milwaukee etc. Co.* v. *Fallon County,* 95 Mont. 568, 28 Pac. (2d) 462, and repeated in *Shekelton* v. *Toole County,* 97 Mont. 213, 33 Pac. (2d) 531, and in *State ex rel. Jaumotte* v. *Zimmerman,* 105 Mont. 464, 73 Pac. (2d) 548, is of controlling application here. In these cases the question whether or not a statute is mandatory or directory was given consideration. We think that here the statute is mandatory in that it required that the judge should examine the proceedings and approve or reject them; but we do not believe that it was absolutely mandatory to the extent that such action taken by the judge after the time provided was without effect and rendered the whole proceeding void. In the *Shekelton Case,* supra, we said: 'It might, however, have been mandatory in the sense that the board could have been compelled to pass and adopt the resolution within the designated thirty days. Now that the board has acted, even out of time, such provision should fairly be viewed as directory only.' Again we think that the matter went more to the form than to the substance, as indicated in *Simon* v. *Craft,* supra, and as quoted with approval in *State ex rel. Hoatson* v. *District Court,* supra.

"The proposition that the whole proceeding was rendered invalid and must be annulled is predicated chiefly upon what was said in *State ex rel. Hoatson* v. *District Court,* supra. In that case the proceedings were annulled by reason of the fact that one of the doctors acted as one of the examining physicians and in addition thereto was sworn and acted as a witness. The record in that case discloses that the only witnesses were the

doctor, who was the examining physician, and the husband of the alleged insane person. This was held to be an insufficient compliance with the statutes which require that there be two or more witnesses examined (sec. 1432, Revised Codes), and that there be at least two doctors authorized in the nature of expert jurymen to pass upon the question of sanity. In that case the court said: 'Here, it is true, the record shows that two witnesses testified and two doctors certified, but one of the doctors testified and then presumed to weigh his own testimony. This may be formal compliance with the letter of the statute, but it violates the spirit and intent and purpose of the Act.' Here there were two doctors and more than the required two additional witnesses—in fact four witnesses—present and testifying, exclusive of Dr. Dinsmore. The fatal defect in the *Hoatson Case* was that there was only one witness in addition to the doctor. This, we think, was the decisive element rather than that the doctor was allowed to testify. It will at once be obvious that the facts of this case are not in any sense comparable with the facts in the *Hoatson Case*. We think that anything said in the *Hoatson Case* which may be construed as sweeping enough to condemn the proceeding here should be considered as overruled.

"An examination of the record in this case discloses the fact that the additional witnesses were representative citizens. Two were members of the board of county commissioners. One was a practicing attorney for whom relator had inquired at the beginning of the hearing. Another was the sheriff of the county who brought relator into the hearing, and the fifth was Dr. Dinsmore. The doctor's testimony was very enlightening and really described facts which showed the basis of the condition of relator rather than opinions of his own.

"It must not be forgotten that section 1435, Revised Codes, imposed on the doctors the obligation not only of hearing all testimony, but of making a personal examination of the alleged insane person. The facts in this case are so clearly and substantially distinguishable from the facts in the *Hoatson Case* that we do not hesitate to say that the action of the court in

that case was correct, but that it does not constitute a convincing precedent for holding these proceedings void.

"The contention that relator was denied any of his rights or denied due process of law by reason of the fact that the record does not affirmatively show that he was present during all of the time of the hearing is not well founded. There is nothing in the statute that requires that the full hearing shall be in the presence of the defendant. Neither is there anything therein that requires that he need be specifically advised of the nature of the proceeding, because, as correctly stated in *Simon* v. *Craft,* supra, 'The essential elements of due process of law are notice and opportunity to defend.' And, as before noted in another connection, it is the substance of things that governs in determining whether such rights were denied. In some cases it may not be safe or wise to keep an accused in court during all of the hearing, although we believe that such is the fair intent of the statute, unless extraordinary conditions render such course unwise.

"It is very apparent from the testimony of relator taken at the hearing that he was far from rational. It is true that he was not interrogated as to his mental capacity. It is not necessary that one so charged admit his mental deficiency, or that he be examined solely on that subject. It was proper for the physicians and for the chairman of the board to talk to the accused on any subject in order that his sanity might be tested. It is apparent that no person in possession of his mental faculties would or could give utterance to the incoherent, irrational and ridiculous statements contained in the record of his testimony.

"It must not be forgotten that the doctors were not invested with the power actually to decide the fact of the mental condition of relator. The statute (sec. 1436, Rev. Codes), requires that they make a certificate showing the enumerated things, including their opinion as to the mental condition of the party involved. This certificate is not binding upon the judge (or chairman, when acting in place of the judge). It is only when the judge or chairman himself believes the person to be so far

disordered in his mind as to endanger health, person or property, that he makes the order (sec. 1438, Rev. Codes). There is some language in the *Hoatson Case* that is applicable to jury trials in ordinary proceedings, but we think that such principles are not applicable to such a statutory proceeding as that under consideration here.

"It is true that the record does not show all the procedural steps required by the statute, but it must be presumed in this proceeding, wherein we are limited to the record, that they were taken. (Sec. 10606, subds. 15 and 33, Rev. Codes; and see *Gaines* v. *Van DeMark*, 106 Mont. 1, 74 Pac. (2d) 454.)

"A careful examination of the record convinces us that the substance of the statutes was observed, and that the writ should be, and is hereby, denied."

As was said in the original opinion just quoted, it was very apparent from the record that petitioner was far from rational at the time of the hearing before the chairman of the county board. The majority opinion decides the matter on a procedural technicality. Assuming, as we are driven to do from the testimony of the man himself, that he was insane at the time of the commitment, it cannot then be said that was actually wrongfully deprived of his liberty—in other words that he was entitled to remain at large.

The record shows that he is now on parole. This indicates at least a partial or temporary cure effected at the hospital. That cannot be said to be a wrong inflicted upon him. In fact, under section 5685, Revised Codes, the parole imputes and presumes prima facie legal capacity sufficient for ordinary business transactions.

If he is actually cured and is now normal, and this is shown to the satisfaction of the authorities at the state hospital, he may have a full and complete discharge from them. Or, under section 10415, he may effect that result by court proceedings. Or, further still, under section 1421, Revised Codes, he may obtain discharge and restoration by application to the State Board of Commissioners for the Insane. All of these methods are predi-

cated upon the present mental capacity of petitioner. If he is not able to show that capacity, of course none of those remedies are open to him, and by the same token if he is not mentally competent at this time he is not entitled to be at large.

I am not willing to set aside the whole proceeding on a mere technicality where it is most obvious that substantial justice has been done. Such drastic action is not necessary in order to effect the legal restoration of petitioner. The exigencies of the situation are not such as to justify resort to the extreme technicalities invoked in the opinion, or to subject those involved in the original commitment and confinement to the perils of further litigation.

Mr. Justice Morris:

I concur in the above dissenting opinion of Mr. Justice Stewart.