2005 WY 36

**In the Matter of the GUARDIANSHIP and Conservatorship of Robert Lee McNEEL, a person in need of protection.**

**Paula Kay McNeel, Appellant (Respondent/Defendant),**

v.

**Robert Lee McNeel, Appellee (Petitioner/Plaintiff).**

No. 04–132.

Supreme Court of Wyoming.

March 31, 2005.

Representing Appellant: Keith Goody, Alpine, Wyoming; Kent Alderman of Parsons Behle & Latimer, Salt Lake City, Utah.

Representing Appellee: Jack Vreeland, Evanston, Wyoming; V. Anthony Vehar, Evanston, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and STEBNER, D.J., Retired.

STEBNER, District Judge, Retired.

[¶ 1]  This is an appeal from the district court's order denying the motions for an independent medical examination and a competency hearing regarding Appellee, Robert Lee McNeel (Mr. McNeel), filed by Appellant, Paula Kay McNeel (Ms. McNeel), in an action wherein Mr. McNeel sought the voluntary appointment of a guardian and conservator on his own behalf.  Upon our review, we affirm.

## ISSUES

[¶ 2]  Ms. McNeel phrases the issues on appeal as:

1.  Whether the trial court erred in holding that Wyoming law does not require findings of competency prior to appointment of a guardian and conservator.

2.  Whether the trial court erred in allowing a guardian and conservator to pursue a divorce action on behalf of a ward without making any determination as to ward's competency.

3.  Whether the trial court erred in ruling that a finding of competency is mooted by a contested mediation understanding.

Mr. McNeel sets forth the issues on appeal as follows:

1.  Does [Ms. McNeel] have standing in [a] voluntary guardianship/conservatorship proceeding to appeal the District Court's order denying [Ms. McNeel's] motions for an independent medical examination and a competency hearing for [Mr. McNeel]?

2.  Is the District Court's order denying [Ms. McNeel's] motions for independent medical examination and for competency hearing an appealable order per W.R.A.P. 1.05?

3.  Is [Ms. McNeel's] defacto appeal of the District Court's order appointing guardian and conservator upon the voluntary application of [Mr. McNeel] timely?

4.  Is [Ms. McNeel] estopped by law of the case or *res judicata* from appealing the District Court's appointment of the guardian/conservator upon voluntary petition?

5.  Has [Ms. McNeel] waived any right she had to appeal the District Court's appointment of the guardian/conservator?

6.  Does Wyoming law require findings of [Mr. McNeel's] competency prior to appointment of a guardian/conservator upon voluntary petition of [Mr. McNeel]?

7.  Should [Ms. McNeel's] second (II) and third (III) arguments be stricken?

8.  Should the Court order sanctions in regard to [Ms. McNeel's] appeal?

### FACTS

[¶3]  On February 25, 2003, Mr. McNeel filed for divorce from Ms. McNeel.[1]  In response, Ms. McNeel filed a motion for an independent medical examination and a motion to stay proceedings in the Divorce Action contending that Mr. McNeel was incapacitated and delusional. Because the Divorce Action was stayed for a period of approximately six months, as a result of an agreement entered into between the McNeels, the district court did not rule on Ms. McNeel's motions.

[¶4]  On March 3, 2003, Ms. McNeel filed a petition for the involuntary appointment of a temporary guardian and conservator on behalf of Mr. McNeel, in a separate action.[2] Mr. McNeel filed his answer to this petition and demanded a jury trial.  On March 27, 2003, the district court continued the hearing on Ms. McNeel's petition and no further action occurred with respect to Guardian/Conservator Action 1.

[¶5]  However, on August 6, 2003, the McNeels participated in a court ordered mediation in the Divorce Action.  At the mediation, the McNeels agreed to their divorce and to the appointment of a guardian and conservator to help effectuate a property division in the Divorce Action.

[¶6]  Subsequently, on August 14, 2003, Mr. McNeel filed a voluntary petition for appointment of a guardian and conservator requesting that Steven D. Olmstead be appointed as his guardian and conservator in a separate and distinct action.[3]  Four days later, Ms. McNeel filed a pleading in Guardian/Conservator Action 2 indicating that she did not object to Mr. Olmstead being appointed as Mr. McNeel's guardian and conservator, but did object to Mr. McNeel's voluntary petition, based on her belief that Mr. McNeel did not have the capacity to file the petition.  Nevertheless, approximately five days thereafter, Ms. McNeel filed a motion for the appointment of Mr. Olmstead as guardian and conservator for Mr. McNeel in Guardian/Conservator Action 2.  This motion indicated that the parties and their attorneys had met with Mr. Olmstead, that the parties had agreed Mr. Olmstead should be appointed guardian and conservator for Mr. McNeel,

---

1.  We will refer to this litigation as the "Divorce Action."

2.  We will refer to this action as "Guardian/Conservator Action 1."

3.  We will refer to this matter as "Guardian/Conservator Action 2." Guardian/Conservator Action 2 is the proceeding involved in this appeal.

and that Mr. Olmstead had agreed to serve in such capacity. On September 3, 2003, the district court appointed Mr. Olmstead as guardian and conservator for Mr. McNeel in Guardian/Conservator Action 2. However, the district court's order did not make any specific finding of competency concerning Mr. McNeel, because the district court ruled that such a determination was not necessary with respect to a voluntary petition.

[¶ 7] On October 21, 2003, Mr. Olmstead filed his resignation as guardian and conservator for Mr. McNeel in Guardian/Conservator Action 2. The district court, however, requested that Mr. Olmstead continue in that capacity at a status conference held on November 19, 2003.[4]

[¶ 8] More than three months later, on January 23, 2004, Ms. McNeel filed a petition for appointment of a professional guardian and conservator for Mr. McNeel in Guardian/Conservator Action 2. This petition was subsequently withdrawn by Ms. McNeel. However, on March 1, 2004, Ms. McNeel filed a motion requesting an independent medical examination for Mr. McNeel in Guardian/Conservator Action 2. On March 8, 2004, Ms. McNeel also filed a motion asking that a competency hearing be held concerning Mr. McNeel in Guardian/Conservator Action 2. On April 19, 2004, the district court denied these motions after hearing, ruling that the question of Mr. McNeel's competency was moot in light of the parties' previous mediation agreement in the Divorce Action.

[¶ 9] On May 11, 2004, Ms. McNeel filed a Notice of Appeal challenging the April 19, 2004 order of the district court entered in Guardian/Conservator Action 2. This notice was signed only by her out-of-state attorney, who had not been admitted to practice in Wyoming. On May 19, 2004, Ms. McNeel filed an Amended Notice of Appeal.

[¶ 10] The district court allowed Mr. McNeel, through his appointed guardian and conservator, to proceed with the Divorce Action. The district court granted Mr. McNeel a divorce from Ms. McNeel on June 30, 2004. Ms. McNeel did not appeal the decree entered in the Divorce Action.

4. On March 11, 2004, Mr. Olmstead formally withdrew his resignation as the appointed guard-

## STANDARD OF REVIEW

[¶ 11] Statutory construction involves a question of law and as such, the review of this Court is *de novo*. *Amoco Production Co. v. Department of Revenue, State of Wyo.*, 2004 WY 89, ¶ 34, 94 P.3d 430, ¶ 34 (Wyo.2004).

.... Our rules of statutory construction are well known and we will not repeat them at length. *See Pagel v. Franscell*, 2002 WY 169, ¶ 9, 57 P.3d 1226, 1230 (Wyo. 2002) (*quoting Wyoming Community College Com'n v. Casper Community College Dist.*, 2001 WY 86, ¶¶ 16–18, 31 P.3d 1242, 1249 (Wyo.2001)). We will, however, note a few particularly pertinent rules of construction. Our primary concern is legislative intent, which intent must be ascertained from the words of the statute. *Id.* Construction is unnecessary where statutory language is unambiguous. *Id.* The intent of an unambiguous statute is determined from the ordinary and obvious meaning of the words used. *In re Wilson*, 2003 WY 105, ¶ 6, 75 P.3d 669, 672 (Wyo. 2003) (*quoting Wyoming Dept. of Transp. v. Haglund*, 982 P.2d 699, 701 (Wyo.1999)). " 'When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature.' " *Pagel*, 2002 WY 169, ¶ 9, 57 P.3d at 1230 (*quoting Wyoming Community College Com'n*, 2001 WY 86, ¶ 16, 31 P.3d at 1249). " 'A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.' " *Pagel*, 2002 WY 169, ¶ 9, 57 P.3d at 1230 (*quoting Wyoming Community College Com'n*, 2001 WY 86, ¶ 17, 31 P.3d at 1249).

In addition to these general rules of construction, we also note more specifically that courts are not free to ignore any word the legislature has used. *Keats v. State*,

ian and conservator for Mr. McNeel in Guardian/Conservator Action 2.

2003 WY 19, ¶ 28, 64 P.3d 104, 113 (Wyo. 2003). And finally, " 'it is a universal rule that courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions.' " *Knowles v. Corkill,* 2002 WY 119, ¶ 19, 51 P.3d 859, 865 (Wyo.2002) (*quoting Lo Sasso v. Braun,* 386 P.2d 630, 632 (Wyo.1963)). *In re Walsh,* 2004 WY 96, ¶¶ 3—4, 96 P.3d 1, ¶¶ 3—4 (Wyo.2004).

## DISCUSSION

### Procedural Issues.

[¶ 12] Initially, Mr. McNeel mounts numerous procedural arguments. He asserts that Ms. McNeel lacks standing to bring the appeal because 1) her appeal is not timely; 2) the district court's order, denying the motions for an independent medical examination and a competency hearing, is a non-appealable order; and 3) Wyoming's voluntary appointment of guardian/conservator procedure is non-adversarial. Upon our review, we do not agree.

[¶ 13] The district court's order, denying Ms. McNeel's motions for an independent medical examination and a competency hearing, was entered on April 19, 2004. Ms. McNeel filed a Notice of Appeal in Guardian/Conservator Action 2, on May 11, 2004. This Notice of Appeal, however, was signed only by counsel from outside of Wyoming. Said counsel was not licensed to practice law in Wyoming. Ms. McNeel filed an Amended Notice of Appeal, signed by Wyoming counsel, on May 19, 2004.

[¶ 14] W.R.A.P. 2.01(a) provides that an appeal from a trial court to an appellate court shall be taken by filing the notice of appeal with the clerk of the trial court within 30 days from the entry of the appealable order. Therefore, we conclude that the Amended Notice of Appeal filed by Ms. McNeel was timely. Furthermore, we are not persuaded by Mr. McNeel's argument that, in reality, Ms. McNeel is appealing the order appointing a guardian and conservator for Mr. McNeel, entered on September 3, 2003, in Guardian/Conservator Action 2. Both Notices of Appeal, filed by Ms. McNeel, explicitly specify her appeal pertains to the district court's order denying motions for an independent medical examination and a competency hearing.

[¶ 15] In addition, Mr. McNeel contends the district court's order, denying Ms. McNeel's motions, is not an appealable order. W.R.A.P. 1.05(a), (b) and (c) defines an appealable order, in applicable part, as an order affecting a substantial right in an action or in a special proceeding, or upon summary application in an action after judgment. Mr. McNeel argues that Ms. McNeel cannot be said to have any substantial rights in Guardian/Conservator Action 2, because a voluntary request for appointment of a guardian and conservator under Wyoming law is a non-adversarial process and Ms. McNeel's motions do not constitute summary applications after judgment. In a related assertion, Mr. McNeel argues that Ms. McNeel lacks standing in Guardian/Conservator Action 2, because Wyoming's statutory scheme for requesting the voluntary appointment of a guardian and conservator does not allow for third-party objectors.

[¶ 16] This Court has previously discussed the issue of standing. In *Pedro/Aspen, Ltd. v. Board of County Com'rs for Natrona County,* 2004 WY 84, ¶ 8, 94 P.3d 412, ¶ 8 (Wyo.2004)(citing *Jolley v. State Loan and Investment Board,* 2002 WY 7, ¶ 6, 38 P.3d 1073, ¶ 6 (Wyo.2002), quoting from *Roe v. Board of County Commissioners, Campbell County,* 997 P.2d 1021, 1022–23 (Wyo.2000)), this Court recognized:

> The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. Accordingly, the doctrine of standing focuses upon whether a litigant is properly situated to assert an issue for judicial or quasi-judicial determination. A litigant is said to have standing when he has a "personal stake in the outcome of the controversy." This personal stake requirement has been described in Wyoming as a "tangible interest" at stake. The tangible interest requirement guarantees that a litigant is sufficiently interested

in a case to present a justiciable controversy.

In *Sinclair Oil Corp. v. Wyoming Public Service Com'n*, 2003 WY 22, ¶ 12, 63 P.3d 887, ¶ 12 (Wyo.2003)(quoting *State ex rel. Bayou Liquors, Inc. v. City of Casper*, 906 P.2d 1046, 1048 (Wyo.1995)), we elaborated:

> The concept of "standing to sue" refers to a right to relief that goes to the existence of a personal claim for relief. *Matter of Various Water Rights in Lake DeSmet Reservoir*, 623 P.2d 764, 767 (Wyo. 1981).
>
> ... The tangible interest requirement guarantees that a litigant is sufficiently interested in a case to present a justiciable controversy. *Laramie Rivers* [*Co. v. Wheatland Irr. Dist.*], 708 P.2d [20,] at 27 [Wyo. 1985] (quoting *Int'l Ass'n Fire Fighters v. Civil Serv. Comm'n*, 702 P.2d 1294, 1297–98 (Wyo.1985)).

*Schulthess v. Carollo*, 832 P.2d 552, 556–57 (Wyo.1992).

We went further in *Sinclair Oil Corp. v. Wyoming Public Service Com'n*, at ¶ 13, to state:

> In *Foster's, Inc. v. City of Laramie*, 718 P.2d 868, 872–73 (Wyo.1986) (quoting from *Matter of Various Water Rights in Lake DeSmet Reservoir*, 623 P.2d 764 (Wyo. 1981)), we clarified that a potential litigant must show injury or potential injury:
>
> > " 'Standing to sue' is a right to relief and goes to the existence of a personal claim for relief. It includes a legal disability, such as insanity or infancy, but it is more. It involves a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. It is closely related to the doctrine of mootness. It requires sufficient personal interest in the outcome of litigation by way of injury or potential injury to warrant consideration by the court." 623 P.2d at 767.

To establish the requisite injury, a petitioner must allege a perceptible, rather than a speculative, harm resulting from the agency action:

> "[A] party is not considered 'aggrieved' when there is only a remote possibility of injury."
>
> . . .
>
> " '[P]leadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action....' *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973)." (Citation omitted.) 623 P.2d at 769.

[¶ 17] Under the facts in this case, we are convinced Ms. McNeel is sufficiently affected to guarantee this Court is faced with the determination of an actual justiciable controversy. While Mr. McNeel tries to minimize Ms. McNeel's involvement, she is properly situated with sufficient pecuniary, personal, and tangible interests at stake given the pending Divorce Action. Ms. McNeel had also previously indicated her concern that Mr. McNeel was mentally incapacitated and delusional.[5] Such involvement assures Ms. McNeel is properly motivated to vigorously advocate her position. Likewise, Ms. McNeel has also shown potential injury or harm is readily perceptible, resulting from the action taken by the district court, rather than merely speculative as argued by Mr. McNeel. Moreover, Wyo. Stat. Ann. § 3–2–105 (LexisNexis 2003) and Wyo. Stat. Ann. § 3–3–106 (LexisNexis 2003) provide the procedures to be utilized with respect to a voluntary application for the appointment of a guardian/conservator. These statutes can only be characterized as setting forth "spe-

---

5. After Mr. McNeel filed his complaint in the Divorce Action, Ms. McNeel filed a motion for an independent medical examination and a motion to stay proceedings in the Divorce Action contending that Mr. McNeel was incapacitated and delusional. On March 3, 2003, Ms. McNeel filed a petition for the appointment of a temporary guardian and conservator on behalf of Mr. McNeel in Guardian/Conservator Action 1. In Guardian/Conservator Action 2, Ms. McNeel filed many petitions and motions dealing with the appointment of a guardian and conservator on behalf of Mr. McNeel.

cial proceedings" as defined under W.R.A.P. 1.05(b).

[¶ 18] In addition, both Wyo. Stat. Ann. §§ 3–2–105(b) and 3–3–106(b) require that a voluntary petition shall state whether notice of a petition for involuntary guardianship/conservatorship, under Wyoming's involuntary appointment statutes, has been served upon a ward. Similarly, Wyo. Stat. Ann. § 3–1–107 mandates that if an involuntary petition is filed before hearing on a voluntary petition, the court must combine the hearings. Therefore, Wyoming's statutory scheme for the voluntary appointment of a guardian/conservator contemplates that third-parties may participate in that process by taking appropriate action.

### Voluntary Petition Issues.

[¶ 19] Ms. McNeel argues that the district court erred in determining Wyoming law does not require findings of competency prior to the appointment of a guardian and conservator. Essentially, she argues that no matter how well intentioned a person may be, that person cannot enter into agreements if that person is incapacitated. Accordingly, a voluntary petition for appointment of a guardian/conservator presupposes that the ward has capacity to consent to the appointment. In support of this argument, Ms. McNeel relies upon our holding in *Thoeming v. District Court*, 379 P.2d 543 (Wyo.1963). Ms. McNeel also contends the district court erred in holding that Mr. McNeel's competency was mooted by the parties' agreement at mediation. In essence, she again argues that Mr. McNeel did not have the capacity to enter into that agreement.

[¶ 20] In response, Mr. McNeel contends that the district court correctly held that Wyoming law does not require findings of competency prior to the appointment of a guardian/conservator, upon a voluntary petition. He asserts that both Wyo. Stat. Ann. §§ 3–2–105 and 3–3–106 simply require the appointment of a guardian/conservator when the court finds that such would be in the best interest of the petitioner. Mr. McNeel further distinguishes our holding in *Thoeming* as merely interpreting Wyo. Stat. § 3—2 (Michie 1957) and not the new voluntary

procedures enacted by the legislature in 1985 through Wyo. Stat. Ann. §§ 3–2–105 and 3–2–106. Finally, Mr. McNeel argues the ruling made by the district court that "the question of whether Mr. McNeel was competent is moot due to the parties' agreement at mediation" does not constitute appealable error because the district court correctly ruled competency is not an issue in a voluntary petition proceeding.

[¶ 21] Wyo. Stat. Ann. § 3–2–105(a) (LexisNexis 2003) squarely sets forth (emphasis added):

(a) A guardian may be appointed by the court upon the petition of the proposed ward, including a minor who has reached the age of fourteen (14) years, *if the court determines that the appointment is in the best interest of the petitioner.*

Further, Wyo. Stat. Ann. § 3–3–106(a) (LexisNexis 2003) clearly provides (emphasis added):

(a) The court may appoint a conservator upon the petition by the proposed ward if:

(i) The petitioner has reached the age of fourteen (14) years; and

(ii) *The court determines that the appointment of a conservator is in the best interest of the petitioner.*

Therefore, the plain wording used within these statutes leaves little doubt the legislature intended that a court may appoint a guardian/conservator for a ward through the defined voluntary process, upon the sole determination that such appointment is in the best interest of the ward. Nevertheless, as noted above, Ms. McNeel argues it is inherent a guardian may not be appointed until a court holds a competency hearing. In support of this proposition, Ms. McNeel cites the case of *Thoeming v. District Court*, 379 P.2d 543, 544 (Wyo.1963), wherein this Court stated:

The basic question in the matter before us is the jurisdiction of the district court to enter the order for the guardianship of the person and estate of Thoeming. Although several matters pertaining thereto are argued, the case turns upon the authority of the district court to proceed under the provision of § 3–2, W.S.1957, with the ap-

pointment of a guardian for an adult person who had not been legally adjudged an incompetent or insane person under the provisions contained in §§ 25–1 to 25–13, W.S.1957, relating to insane persons. It is conceded by the respondents that there was no hearing regarding incompetency by a lunacy commission or jury and that there was no direct finding concerning the matter. It is the contention of respondents that the guardianship proceeding in district court was not adversary in nature, was taken solely for the protection of Thoeming who was not insane but incompetent, and that guardianship statutes must of necessity be summary in nature and have flexibility. Such position is entirely without merit. It is elementary that proceedings for adjudication of insanity or mental incompetency are required to be in strict compliance with statutory requirements. *Hultquist v. People,* 77 Colo. 310, 236 P. 995 [(1925)]; *State ex rel. Leonidas v. Larson,* 109 Mont. 70, 92 P.2d 774 [(1939)]. In the absence of such compliance a judgment declaring a person to be of unsound mind is void. *McFarland v. Commonwealth,* 249 Ky. 128, 60 S.W.2d 360 [(1933)]; *Ex parte McLaughlin,* Mo. App., 105 S.W.2d 1020 [(1937)]; *In re Ellern,* 23 Wash.2d 219, 160 P.2d 639 [(1945)]; 44 C.J.S. Insane Persons § 14. One court in this area has well expressed the rule in saying, "If there is any class of cases which should be conducted with the utmost care to observe all of the requirements of the statute, it is the cases conducted for the purpose of determining the sanity of a citizen. * * *" (*In re Wells' Estate,* 133 Or. 155, 289 P. 511, 512 [(1930)].) The statute under which the district court acted, § 3–2, W.S.1957, reads:

"The district court of each county, or the judge thereof, when it appears necessary, may appoint guardians for the persons and estates, or either of them, of minors, incompetents or insane persons, who have no legally appointed guardian * * *."

In its genesis (Laws 1890–1891, ch. 70, art. 21, § 1), the statute dealt only with minors. The revision contained in S.L. of Wyoming, 1931, ch. 73, § 145, added "incompetents or insane persons" to the category, but provided no means for adjudicating them to be such. Accordingly, we look to Title 25 of W.S.1957 for procedure. In that connection we observe that one of the definitions of an insane person under § 25–2, W.S.1957, is "a person of unsound mind and incapable of managing his own affairs." The procedure for determining that a person is insane or mentally incompetent is definite and clear. It requires a finding either by a lunacy commission or by a jury and that only after various steps have been taken. Any attempt to adjudicate a person as an "incompetent" without compliance with the statutes contained in this chapter would be a deprivation of due process. Since there had been no adjudication of Thoeming's incompetence on July 13, 1962, the district court was without jurisdiction to appoint a guardian for him and such purported order is void.

Ms. McNeel argues that an independent medical examination and a competency hearing are mandatory procedures that a court cannot ignore. Since the district court failed to comply with these requirements, Ms. McNeel asserts the district court did not have the jurisdiction to appoint Mr. Olmstead as guardian/conservator for Mr. McNeel.

[¶ 22] A simple reading of the quoted language in *Thoeming* makes it evident our holding in that case is applicable only towards an interpretation of the statutory guidelines that were in place at that time, or at most, cases wherein a similar involuntary process is involved. Furthermore, the voluntary petition scheme, which is currently in place, was first enacted in 1985 without any statutory predecessors. Prior to 1985, Wyoming only authorized the appointment of guardians/conservators for "minors, incompetents or insane persons." Wyo. Stat. Ann. § 3—2 (1957). Accordingly, this Court did not even impliedly address the current voluntary petition statutes through its opinion in *Thoeming.*

[¶ 23] This conclusion is also supported by review of Wyoming's current overall statutory makeup regarding the appointment of guardians/conservators. As indicated above,

a court may appoint a guardian/conservator for a ward under the voluntary appointment process if the court finds that such would be in the best interest of the ward. Wyo. Stat. Ann. §§ 3–2–105(a) and 3–3–106(a) (Lexis-Nexis 2003). However, as noted previously, a voluntary petition must designate if notice of a petition for involuntary guardianship/conservatorship has been served upon a ward under Wyoming's involuntary appointment statutes. Wyo. Stat. Ann. §§ 3–2–105(b) and 3–3–106(b) (LexisNexis 2003). Likewise, Wyo. Stat. Ann. § 3–1–107 (Lexis-Nexis 2003) mandates that if an involuntary petition has been filed prior to the time of hearing, on a voluntary petition, the court shall combine the hearings.

[¶ 24] Therefore, if a third party has any inclination that the competency of a proposed ward is of concern upon the filing of a voluntary appointment petition, that third party need only file an involuntary petition pursuant to Wyo. Stat. Ann. §§ 3–2–101 and 3–3–101 (LexisNexis 2003) prior to hearing on the voluntary petition. In making such an application, the competency of the proposed ward is placed directly at issue as both statutes require enumeration of the status of the proposed ward as "a minor, an incompetent person or a mentally incompetent person and the reason for the petition." Likewise, it is mandatory for a court to state its findings, including the reasons why the ward is in need of a guardian/conservator. Wyo. Stat. Ann. §§ 3–2–104(b)(i) and 3–3–104(b)(ii) (LexisNexis 2003).

[¶ 25] Finally, we believe that common sense supports our determination that differing requisites must be shown in an involuntary, as opposed to a voluntary, petition for appointment of a guardian/conservator. Wyo. Stat. Ann. § 3–1–101(a)(ix) and (xii) (LexisNexis 2003) together define an "incompetent person" as an individual who is unable unassisted to properly manage and take of himself or his property as a result of infirmities of advanced age, physical disability, disease, the use of alcohol or controlled substances, mental illness, mental deficiency, or mental retardation. In a voluntary situation, a proposed ward may be competent but desire assistance of a guardian/conservator in a

particular realm of his life dealing with finances, real or personal property, health issues, or the like. Hence, it is probable that the legislature intended to allow the district court to appoint a guardian/conservator for a ward who voluntarily requests assistance, upon the limited showing that such appointment would be in the ward's best interest. Thereby, a proposed ward may make voluntary application for assistance, without the uncomfortable and daunting proposition of having to admit he is incompetent.

[¶ 26] We, therefore, hold pursuant to Wyo. Stat. Ann. §§ 3–2–105(a) and 3–3–106(a) that when an involuntary petition for appointment of a guardian/conservator is not filed prior to hearing on the voluntary petition, a court may appoint a guardian/conservator for a ward solely upon a finding that such appointment would be in the best interest of the ward.

[¶ 27] Additionally, Ms. McNeel infers the district court was required to determine the competency of Mr. McNeel pursuant to Wyo. Stat. Ann. § 3–1–107 (LexisNexis 2003) because 1) she had previously filed an involuntary petition for the appointment of a guardian/conservator for Mr. McNeel in Guardian/Conservator Action 1, and/or 2) she had directly requested the same through numerous motions filed in Guardian/Conservator Action 2. Under the circumstances in this case, we do not agree.

[¶ 28] Ms. McNeel filed a petition for the appointment of a temporary guardian and conservator on behalf of Mr. McNeel in Guardian/Conservator Action 1. The district court continued the hearing on Ms. McNeel's petition and no further action occurred with respect to Guardian/Conservator Action 1. Therefore, Ms. McNeel effectively abandoned such effort.

[¶ 29] Later, Ms. McNeel did not object to Mr. Olmstead being appointed as Mr. McNeel's guardian and conservator, but did object to Mr. McNeel's voluntary petition based on her belief that Mr. McNeel did not have the capacity to file the petition in Guardian/Conservator Action 2. Nevertheless, Ms. McNeel in her motion for a guardian and conservator subsequently indicated

that 1) the parties and their attorneys had met with Mr. Olmstead, 2) that the parties had agreed that Mr. Olmstead should be appointed guardian and conservator for Mr. McNeel, and 3) that Mr. Olmstead had agreed to serve in such capacity. Thus, the pending objection to Mr. McNeel's voluntary petition was withdrawn by Ms. McNeel. Ms. McNeel further agreed to the appointment of Mr. Olmstead.

[¶ 30]  On September 3, 2003, the district court appointed Mr. Olmstead as guardian and conservator for Mr. McNeel in Guardian/Conservator Action 2. Nearly three months later, Ms. McNeel filed a petition for appointment of a professional guardian and conservator for Mr. McNeel. This petition was subsequently withdrawn by Ms. McNeel.

[¶ 31]  Ms. McNeel again filed a motion on March 1, 2004, requesting an independent medical examination for Mr. McNeel. A second motion was filed a week later, by Ms. McNeel, requesting a competency hearing. Both motions were filed months after the district court had already appointed a guardian and conservator for Mr. McNeel.

[¶ 32]  Ms. McNeel did not comply with the explicit parameters set forth in Wyo. Stat. Ann. § 3–1–107. An involuntary petition was not filed, or openly pending, prior to entry of the district court's order on Mr. McNeel's voluntary petition. Additionally, Ms. McNeel's last two motions requesting an independent medical examination and a competency hearing were well overdue. The district court was, therefore, under no requirement to make a competency ruling, as required under the involuntary appointment process pursuant to Wyo. Stat. Ann. § 3–1–107.

[¶ 33]  In conclusion, we need not address those remaining issues brought forth by the parties in this appeal surrounding the voluntary petition of Mr. McNeel in Guardian/Conservator Action 2. Such issues are rendered moot by our dispositive holding detailed above.

### Divorce Action Issue.

[¶ 34]  Ms. McNeel further asserts the district court erred in allowing Mr. Olmstead to proceed on Mr. McNeel's behalf in the Divorce Action. · As noted above, the district court ultimately granted Mr. McNeel a divorce from Ms. McNeel. Ms. McNeel now contends the divorce decree should be set aside, although she did not appeal the entry of the decree in the Divorce Action. Rather, on May 11 and May 19, 2004, Ms. McNeel filed notices of appeal solely challenging the April 19, 2004 order of the district court denying her motions for an independent medical examination and a competency hearing in Guardian/Conservator Action 2. Moreover, we are not persuaded by Ms. McNeel's argument that the Divorce Action is inextricably intertwined with Guardian/Conservator Action 2.

[¶ 35]  Those issues directly raised concerning the district court's order, that was particularly appealed from, are the only matters that are before this Court for disposition on appeal. Accordingly, the divorce granted to Mr. McNeel by the district court in the Divorce Action is not now properly before this Court for determination and will not be addressed.

### Sanctions on Appeal.

[¶ 36]  Mr. McNeel summarily requests that this Court award him sanctions against Ms. McNeel under W.R.A.P. 10.05, because there was no reasonable cause for this appeal. This Court has previously held that we are generally reluctant to impose sanctions, but will make such an award in those rare circumstances where an appellate brief lacks cogent argument, is devoid of pertinent authority to support the claims of error, and/or fails to make adequate references to the record. *Ahearn v. Hollon*, 2002 WY 125, ¶ 29, 53 P.3d 87, ¶ 29 (Wyo.2002)(citing *Gray v. Stratton Real Estate*, 2001 WY 125, ¶ 11, 36 P.3d 1127, ¶ 11 (Wyo.2001)). This appeal is not so lacking in merit as to qualify for sanctions.

### CONCLUSION

[¶ 37]  As indicated above, we find no error in the proceedings. We, therefore, affirm the action taken by the district court denying Ms. McNeel's motions for an independent medical examination and a compe-

tency hearing. We further refuse to award sanctions on appeal against Ms. McNeel pursuant to W.R.A.P. 10.05.