# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 21

OCTOBER TERM, A.D. 2014

*February 18, 2015*

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF MARIO
ARELLANO, AN EMPLOYEE OF L & L
ENTERPRISES:

L & L ENTERPRISES,

Appellant
(Respondent),

v.

MARIO ARELLANO,

Appellee
(Petitioner).

S-14-0164

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
    F. Scott Peasley of Peasley Law Office, Douglas, Wyoming

*Representing Appellee:*
    Peter J. Timbers of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant L&L Enterprises challenges a district court order requiring the Wyoming Division of Workers' Compensation to award benefits to its former employee, Appellee Mario Arellano.  After he was injured on the job and made a worker's compensation claim, Mr. Arellano turned out to be an alien who was not authorized to be or work in the United States.  L&L urges us to find that the Office of Administrative Hearings (OAH) was correct in denying him benefits, asserting that he is not an "employee" as defined by Wyo. Stat. Ann. § 27-14-102(a)(vii) (LexisNexis Supp. 2014) and that he is not entitled to benefits because he fraudulently obtained his employment by providing false documentation.

[¶2]    We find that the district court was correct in concluding the OAH's action was not in accordance with the law and in awarding benefits.  We therefore affirm.

## ISSUES

[¶3]    1. Was the OAH's order denying worker's compensation benefits for Arellano, because he did not meet the definition of "employee" under the Wyoming Workers' Compensation Act, in accordance with the law?

2. Do Arellano's misrepresentations in providing false documentation and information to secure employment vitiate any right to receive benefits under the Act?

## FACTS

[¶4]    Arellano sought employment with L&L, which required him to complete a Form I-9 and provide two forms of identification.[1]  Arellano filled out the employee portion of

---

[1] A Form I-9 is utilized for verifying the identity and employment authorization of an individual hired for employment in the United States.  *See* http://www.uscis.gov/i-9 (last visited Feb. 4, 2015).  The U.S. Citizen and Immigration Services explains:

> All U.S. employers must ensure proper completion of Form I-9 for each individual they hire for employment in the United States. This includes citizens and noncitizens. Both employees and employers (or authorized representatives of the employer) must complete the form. On the form, an employee must attest to his or her employment authorization. The employee must also present his or her employer with acceptable documents evidencing identity and employment authorization. The employer must examine the employment eligibility and identity document(s) an employee presents to determine whether the document(s) reasonably appear to be genuine and to relate to the employee and record the document information on the Form I-9.

*Id.*

1

the I-9, attesting under penalty of perjury that he was a citizen or national of the United States.[2]  He also provided a New Mexico driver's license and a social security card that L&L examined to confirm his identity and citizenship.

[¶5]    After being employed for roughly four months, Arellano hurt his lower back on the job, and soon thereafter completed a Wyoming Report of Injury.  The Wyoming Division of Workers' Compensation issued a *Final Determination Regarding Compensability* in which it denied Arellano's claim for coverage, determining that it could not approve payment of the claimed benefits because: (1) it had not received requested medical documentation to support the claim that a work-related injury had occurred; (2) the incident did not meet the definition of an injury in the workers' compensation statutes; and (3) it had not received requested information to prove residency and authorization to work in the United States.

[¶6]    Arellano challenged the Division's decision by appealing to the Office of Administrative Hearings.  A contested case hearing was held, and Arellano admitted that his social security card was a fake he bought on the street from someone.  He also admitted that the information on the Form I-9 was therefore false, that he was a citizen of Mexico, and that he "didn't know" if he had permission to work in the United States.

[¶7]    After a hearing, the OAH hearing examiner assigned to the case issued his *Findings of Fact, Conclusions of Law, and Order*, in which he held that Arellano met his burden of establishing that he suffered a low back injury during the course and scope of his employment.  However, the examiner held that he had failed to establish that he was a covered "employee" as defined under Wyoming's workers' compensation statutes.  The examiner found that L&L did in fact reasonably believe that Arellano was a citizen who could lawfully work in this country.  Nonetheless, he found "it hard to believe the Wyoming Legislature intended to provide coverage when fraud has been committed" and that "an employer's 'reasonable belief' must be based upon valid information . . . ."  He therefore denied benefits.

[¶8]    Arellano petitioned the district court for review of the OAH decision.  The court reversed the OAH, finding that its denial of Arellano's claim for "workers' compensation benefits was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  It reasoned that the workers' compensation statute's definition of a covered employee, "by its clear and unambiguous terms, requires only that an employer reasonably believe that, based upon the documents in its possession at the date of hire and at the date of the injury, the employee is authorized to work in the United States."  Applying this interpretation to the OAH findings of fact, the district court determined that Arellano had met his burden of proving each of the elements of his worker's

---

[2] L&L executed the employer part of the I-9 and there is no dispute about the completeness of the form.

compensation claim, and particularly that he was in fact an employee for workers' compensation purposes.

[¶9]   L&L timely perfected this appeal.

## STANDARD OF REVIEW

[¶10]  "On appeal from a district court order on petition for review of an administrative agency ruling, we review the case as though it came directly to this Court from the agency and give no deference to the district court's decision." *In re Hartmann*, 2015 WY 1, ¶ 19, ___ P.3d ___, __ (Wyo. 2015).  This Court's review of agency action is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013), which provides in pertinent part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> .   .   .
>
> ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; . . . .

We review questions of law, including statutory interpretation, *de novo*.  *In re Hartmann*, ¶ 19, ___ P.3d at ___; *State ex rel. Dep't of Workforce Servs. v. Clements*, 2014 WY 68, ¶ 7, 326 P.3d 177, 179 (Wyo. 2014).

## DISCUSSION

[¶11]  L&L's primary argument tracks the OAH examiner's reasoning that the statutory definition of "employee" for workers' compensation benefits does not encompass illegal aliens who submit false documents and information to secure employment.   L&L contends that a fake social security card does not qualify as a "document," and that its belief that Arellano was entitled to work in this country cannot be reasonable because it was based on admittedly false information.

3

[¶12] L&L also argues that Arellano's fraudulent conduct is an independent basis to deprive him of benefits. It claims that the fraud not only led it to hire him, but that any award of benefits was also the result of that fraud, because if it had not employed him, he would have had no arguable claim for workers' compensation benefits.

### *"Employee" within the meaning of the Wyoming Workers' Compensation Act*

[¶13] We must interpret § 27-14-102(a)(vii) to determine whether Arellano is a covered "employee" as defined by that statute. *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002) ("[O]ur job is to give effect to the most likely, most reasonable, interpretation of the statute, given its design and purpose."). In interpreting statutes, our objective is to determine the legislature's intent. *State ex rel. W. Park Hosp. Dist. v. Skoric*, 2014 WY 41, ¶ 10, 321 P.3d 334, 338 (Wyo. 2014). We must look to the ordinary and obvious meaning of the words utilized while considering their arrangement and connection with each other, "for when the words are clear and unambiguous, there is a peril that a court may impermissibly substitute its own views if any attempt is made to interpret or construe statutes on any basis other than the language invoked by the legislature." *Id.*

[¶14] When a statute is sufficiently clear and unambiguous, we will give effect to the plain and ordinary meaning of the words used in it, and we will not resort to rules of statutory construction. *Id.*, ¶ 11, 321 P.3d at 338. "A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *In re Estate of Scherer*, 2014 WY 129, ¶ 13, 336 P.3d 129, 133 (Wyo. 2014) (citation omitted). "Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." *Id.*

[¶15] A claimant seeking workers' compensation benefits must prove all of the elements of his claim by a preponderance of the evidence. *Johnson v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2014 WY 33, ¶ 21, 321 P.3d 318, 323 (Wyo. 2014). As part of that burden, the claimant must prove he is a covered employee as defined by the Act, which defines the term "employee" to include

> any person engaged in any extrahazardous employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written, and includes legally employed minors, aliens authorized to work by the United States department of justice, office of citizenship and immigration services, **and aliens whom the employer reasonably believes, at the date of hire and the date of injury based upon documentation in the employer's possession, to be authorized to work by the United States department of justice, office of citizenship and immigration services.**

4

Wyo. Stat. Ann. § 27-14-102(a)(vii) (emphasis added). The highlighted portion was added by the legislature in 2005.[3] *See* 2005 Wyo. Sess. Laws ch. 185, § 2.

[¶16] We find the language of § 27-14-102(a)(vii) to be clear, unambiguous and straightforward. It plainly requires only that an employer reasonably believe, based upon "documentation" in its possession at the date of hire and at the date of injury, that the employee is authorized to work in the United States. The language regarding the authenticity of documents and truth of representations that L&L urges us to read into the statute is simply not there. *Stutzman v. Office of Wyoming State Eng'r*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo. 2006) ("We will not insert language into a statute that the legislature omitted.").

[¶17] Interpreting this statute in any other way would render the language added in 2005 meaningless. *See McTiernan v. Jellis*, 2013 WY 151, ¶ 20, 316 P.3d 1153, 1159-60 (Wyo. 2013) (statutes must be construed so that no portion is rendered meaningless and interpretation should not produce an absurd result). If we accepted L&L's argument that Arellano's fake social security card does not qualify as a "document," and that its belief of his status to work in this country cannot be reasonable when false information led to that belief, the language added in 2005 would serve no purpose.

[¶18] This is so because any alien producing valid written authorization to work in the United States would satisfy the longstanding language of § 27-14-102(a)(vii), which applies to "aliens authorized to work by the United States department of justice, office of citizenship and immigration services . . . ." The language added in 2005—"aliens whom the employer reasonably believes, at the date of hire and the date of injury based upon documentation in the employer's possession, to be authorized to work by the United States department of justice, office of citizenship and immigration services"—would be meaningless, as it would equate to the requirements of the preceding sentence. We are not free to ignore words the legislature used in a statute, and we would have to do so to interpret this language as Appellant argues we should. *In re Guardianship of McNeel*, 2005 WY 36, ¶ 11, 109 P.3d 510, 513 (Wyo. 2005) (citing *Keats v. State*, 2003 WY 19, ¶ 28, 64 P.3d 104, 113 (Wyo. 2003)).

[¶19] We believe the legislature intended the result we and the district court have reached, and conclude that the 2005 amendment was intended to protect employers from being sued in tort by illegal aliens who obtained employment using false documents and information. *See* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 66.03 (2014) ("Employment of Illegal Aliens"). If illegal aliens believed by their

---

[3] In *Felix v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 986 P.2d 161 (Wyo. 1999), this Court considered the pre-2005 language of the statute. Our analysis in *Felix* is therefore of little significance to the issue in the instant case. Indeed, it is undeniable that Arellano would not be covered if his injury occurred prior to the 2005 amendments, because he was not in fact authorized to work in this country.

employers to have authorization to work in this country were not employees for workers' compensation purposes, they could sue and recover damages both from the employer and coemployees by proving ordinary negligence. Damages would be limited only by whatever a particular injured employee could persuade a jury to award, while workers' compensation benefits are limited. Paradoxically, therefore, an injured worker who is lawfully in this country could conceivably receive considerably less than a worker who is working illegally could recover in a tort action.

[¶20] It is most likely that the legislature sought to limit the exposure of employers who reasonably believe an employee is authorized to work here even when he is actually not. A reasonable but mistaken belief would almost necessarily be based on false documents and representations. On the other hand, the legislature evidently intended to expose employers who knew they had hired illegal aliens to tort liability, perhaps as a deterrent.

[¶21] Further supporting our conclusion is our recent examination of this statute under *contra* circumstances. *See Herrera v. Phillipps*, 2014 WY 118, 334 P.3d 1225 (Wyo. 2014). In *Herrera*, an employee sued his employer in tort seeking to recover damages for injuries sustained on the job. *Id.,* ¶¶ 4-5, 334 P.3d at 1227. The employer moved for summary judgment, arguing that it was immune from suit due to the workers' compensation bar. The employee argued that his employer was not immune because he was not an "employee" under the statutory definition found in the Act; that is, because he was not legally authorized to work in the United States and the employer did not have a reasonable belief that he was authorized to work in this country. *Id.* The district court granted the employer's motion for summary judgment, concluding that there was no genuine dispute as to the material fact that the employer reasonably believed the employee was authorized to work in the United States. *Id*, ¶ 7, 334 P.3d at 1227.

[¶22] We reversed, finding a genuine issue of material fact as to whether the employer reasonably believed that the employee was authorized to work in the United States based on the documents in its possession (*i.e.*, an incomplete Form I-9). *Herrera*, ¶ 17, 334 P.3d at 1230. In so doing, we examined § 27-14-102(a)(vii) and explained:

> [Employee's] argument, taken to its logical limit, is that an employer must have a properly completed I-9 in its possession in order to prove that it had a reasonable belief that an employee is authorized to work. The statutory language does not allow such an interpretation. The statute requires a reasonable belief "based upon documentation in the employer's possession," that an employee is authorized to work. The statute does not specify that the documentation in the employer's possession must be a completed I-9, indicating that other documents could also provide the basis for a reasonable belief.

6

*Id.*, ¶ 14, 334 P.3d at 1229.

[¶23]  In this case, it is undisputed that L&L believed that Arellano was authorized to work in the United States when it hired him.  Its belief was reasonably based upon the information and documentation he provided, even though his social security card later turned out to be a fake and the information in the Form I-9 proved to be false.  Based on the unchallenged findings of fact made by the OAH hearing examiner and the clear language of § 27-14-102(a)(vii), we can only conclude that Arellano was an employee as contemplated by the Act.  Thus, the OAH's conclusion to the contrary was not in accordance with the law.

### *Fraudulently obtaining employment by providing false documents*

[¶24]  In its second issue, L&L argues that the misrepresentations Arellano made should preclude any right to receive benefits.  L&L relies on Wyo. Stat. Ann. § 27-14-510(a), which provides for criminal penalties for any person who makes false statements to obtain payment under the Act.  It also relies on Wyo. Stat. Ann. § 27-14-605(a), which allows an award of benefits based upon fraudulent conduct to be reopened.

[¶25]  We are able to succinctly dispose of this argument.  These statutes are not applicable to this situation.  Instead, they specifically deal with situations in which misrepresentations have been made in order to receive benefits under the Act.  Section 27-14-510(a) states, for instance, that "[a]ny person who knowingly makes, authorizes or permits any misrepresentation or false statement to be made for the purpose of him or another person receiving payment of any kind under this act is guilty" of a misdemeanor or felony, depending on the amount involved.  Wyo. Stat. Ann. § 27-14-510(a) (LexisNexis 2013).  There is no evidence that Arellano misrepresented the facts of his injury to L&L, his providers or the Division to receive benefits.  There is also no reasonable nexus between the misrepresentations he made to gain employment and his application for benefits for the work-related injury he subsequently suffered.

[¶26]  There is a distinction between making a misrepresentation or false statement in obtaining employment and doing the same to obtain benefits under the Act.  As one commentator explains, "it has been held that employment which has been obtained by the making of false statements—even criminally false statements—whether by a minor or an adult, is still employment; that is, the technical illegality will not of itself destroy compensation coverage."  5 Larson, *supra*, § 66.04 ("False Statements at Hiring").  The majority of courts in this country are in agreement with this position, and with a few exceptions, illegal aliens are considered covered employees.  *Id.*, § 66.03.

[¶27]  In summary, the legislature's intent is clear, and the 2005 amendment to § 27-14-102(a)(vii) is unambiguous.  We are convinced that the legislature considered employer

7

immunity and liability in circumstances like this and amended the statute to make the cost of injury to employees believed to be lawfully employed an ordinary cost of doing business and to eliminate the specter of tort liability. The benefit to employers is that they "are immune from suit by their employees, and employees are barred from suing their employers." *Herrera*, ¶ 9, 334 P.3d at 1228.

[¶28]  Affirmed.