# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 134

APRIL TERM, A.D. 2015

October 6, 2015

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

ADALBERTO GONZALEZ,

Appellant
(Petitioner/Claimant),

v.                                                                              S-15-0016

REIMAN CORP.,

Appellee
(Respondent/Employer).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
James E. Gigax of Murr, Siler & Accomazzo, P.C., Denver, CO.

*Representing Appellee:*
Raymond W. Martin and Jane M. France of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, WY.

*Before HILL, DAVIS, FOX, and KAUTZ, JJ, and GOLDEN, J., Retired.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   Reiman Corp. (Reiman) hired Adalberto Gonzalez first in April 2007 and then again in 2008.  In 2011, Mr. Gonzalez suffered a work related injury and filed an injury report with the Wyoming Workers' Compensation Division (Division).  The Division denied benefits on the ground that Mr. Gonzalez failed to show that he was authorized to work in the United States, and Reiman and Mr. Gonzalez both appealed that decision to the Office of Administrative Hearings (OAH).  During proceedings before the OAH, Mr. Gonzalez withdrew his objection to the Division's denial of benefits, but Reiman maintained its position that Mr. Gonzalez was an employee, as the Worker's Compensation Act defines that term, and was thus entitled to worker's compensation benefits.

[¶2]   Following an evidentiary hearing, the OAH concluded that although Mr. Gonzalez had submitted fake work authorization documents, Reiman had a reasonable belief that Mr. Gonzalez was authorized to work in the United States when it hired him and Mr. Gonzalez was therefore an employee entitled to worker's compensation benefits.  Mr. Gonzalez and the Division appealed that determination to the district court, contending the OAH erred in its interpretation of the term "employee" and that its ruling was unsupported by substantial evidence.  The district court affirmed the OAH ruling, and Mr. Gonzalez appealed to this Court.  We affirm.

## ISSUES

[¶3]   Mr. Gonzalez states the issues on appeal as follows:

> A.   Whether W.S. § 27-14-102(a)(vii)'s documentation-based "reasonable belief" can exist, at the time of hire, when the employer inspects no documents upon hire.
> B.   Whether W.S. § 27-14-102(a)(vii)'s "reasonable belief" in USICS-granted work permission can exist, when the employer possesses no USCIS documentation.

## FACTS

[¶4]   Reiman first hired Mr. Gonzalez as a laborer in April 2007 to work on a project at Buffalo Creek between Dubois and Jackson, Wyoming.  Dave Brown was the Reiman superintendant who hired Mr. Gonzalez, and during an initial hiring meeting with Mr. Gonzalez, they met in a job trailer at the Buffalo Creek work site.  Mr. Brown had Mr.

1

Gonzalez complete and sign or initial a number of documents, including an application for employment, a new hire/rehire report, a W-4 form, and a Form I-9.[1]

[¶5]    During their initial meeting, Mr. Gonzalez also presented work authorization documents to Mr. Brown, including a social security card and a permanent resident card. Mr. Brown did not make copies of those documents because the Buffalo Creek work site did not yet have electricity running to it to allow for the use of a copier. Mr. Gonzalez confirmed that he presented social security and permanent resident cards to Mr. Brown, but in the course of his worker's compensation dispute, Mr. Gonzalez admitted the documents he presented to Mr. Brown were fake. Mr. Brown did not know the documents were fake, and Mr. Gonzalez did not tell him they were fake.

[¶6]    At some point in 2007, Dave Brown terminated Mr. Gonzalez's employment with Reiman. In April 2008, Leo Alvarado, another of Reiman's superintendants, rehired Mr. Gonzalez to work on Reiman projects in the Rock Springs/Rawlins area where Mr. Alvarado was superintendant. At that time, Reiman had a policy that allowed the rehire of a former employee without completion of hiring documents, including the Form I-9, if the employee was hired within six months of his last employment with Reiman. The policy, while it was in place, was intended to accommodate the rehiring of employees laid off due to weather-related work slowdowns. Pursuant to this policy, Mr. Gonzalez showed Mr. Alvarado a pay stub showing his recent employment with Reiman, but Mr. Alvarado did not require Mr. Gonzalez to complete any hiring documents or present work authorization documents. Mr. Alvarado explained that he took this approach pursuant to the Reiman rehire policy and because "all the paperwork was already at the office."

[¶7]    Sometime after 2008, Reiman performed an audit of its employment files and discovered that a number of employees did not have a Form I-9 on file. To remedy the deficiency, Reiman's human resources manager informed each superintendant of the employees for whom Reiman did not have a Form I-9 on file and asked that the superintendants have those employees complete a new Form I-9. At the time of the audit and completion of the I-9s, Reiman was consulting with an immigration attorney who had advised against retaining copies of work authorization documents, such as social security cards and permanent residence cards. It was therefore Reiman's policy that the superintendants not make copies of the work authorization documents they reviewed in connection with the completion of the new I-9s.

[¶8]    Mr. Gonzalez was one of the Reiman employees who did not have a Form I-9 on file, and in May 2010, superintendant Leo Alvarado had Mr. Gonzalez complete the form. At that time, Mr. Alvarado checked Mr. Gonzalez's social security card and

---

[1] A Form I–9 is a federal form used to verify the identity and employment authorization of an individual hired for employment in the United States. *L & L Enters. v. Arellano (In re Arellano)*, 2015 WY 21, ¶ 4, 344 P.3d 249, 250 n.1 (Wyo. 2015) (citing http://www.uscis.gov/i–9).

permanent resident card and listed both documents and their numbers on the Form I-9. The cards Mr. Gonzalez presented to Mr. Alvarado were the same fake documents he had shown to Mr. Brown, and like Mr. Brown, Mr. Alvarado did not recognize that the documents were fake. The completed 2010 Form I-9 was dated May 12, 2010 and was signed by both Mr. Gonzalez and Mr. Alvarado.

[¶9] On August 30, 2011, Mr. Gonzalez was working on a bridge on I-80 when a wooden plank on which he was seated broke, causing him to fall about twenty feet to the concrete below and suffer serious injuries to his face and teeth, and to his right hand and arm. Mr. Gonzalez filed an injury report with the Wyoming Workers' Compensation Division (Division), and on September 29, 2011, the Division issued a final determination denying benefits. The Division denied benefits because Mr. Gonzalez had not submitted documentation of his residency and authority to work in the United States.

[¶10] Both Reiman and Mr. Gonzalez objected to the Division's final determination and requested a hearing. On November 22, 2011, the Division referred Mr. Gonzalez's claim to the Office of Administrative Hearings (OAH) for an evidentiary hearing. The OAH held an evidentiary hearing on April 9-10, 2013, and at the outset of the hearing, Mr. Gonzalez, through his counsel, notified the OAH that he was withdrawing his objection to the Division's final determination. Reiman maintained its position that Mr. Gonzalez was entitled to workers' compensation benefits.

[¶11] On August 14, 2013, the OAH issued its Findings of Fact, Conclusions of Law, and Order. The OAH concluded that Reiman reasonably believed that Mr. Gonzalez was authorized to work in the United States and Mr. Gonzalez was therefore an employee as that term is defined by the Wyoming Workers' Compensation Act. Based upon its findings and conclusions, the OAH overturned the Division's final determination denying benefits and ordered that the case be returned to the Division.

[¶12] On September 13, 2013, Mr. Gonzalez filed a petition for review in district court, and on November 12, 2013, the Division entered its appearance in the appeal to the district court. On December 1, 2014, the district court issued an order affirming the OAH ruling. Mr. Gonzalez thereafter timely filed a notice of appeal to this Court.[2]

## STANDARD OF REVIEW

[¶13] This Court reviews a district court's decision on an administrative decision as though the case came directly from the administrative agency. *Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 30, 338 P.3d 921, 928 (Wyo. 2014) (citing *Hirsch v. State ex rel. Wyo. Workers' Safety & Comp. Div.*,

---

[2] The Division did not appeal the district court ruling and is not a party to the appeal to this Court.

3

2014 WY 61, ¶ 33, 323 P.3d 1107, 1115 (Wyo. 2014)).  Our review is governed by the Wyoming Administrative Procedure Act, which provides:

>        (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
>> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>>
>> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>>
>>> (A)  Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>>
>>> (B)  Contrary to constitutional right, power, privilege or immunity;
>>>
>>> (C)  In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>>>
>>> (D)  Without observance of procedure required by law; or
>>>
>>> (E)  Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2015).

[¶14]  Under the Wyoming APA, we review an agency's findings of fact by applying the substantial evidence standard.  *Jacobs v. State ex. rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 8, 301 P.3d 137, 141 (Wyo. 2013); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Substantial evidence means relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Jacobs*, ¶ 8, 301 P.3d at 141; *Bush v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005).  "'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a

rational premise for those findings.'" *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011) (quoting *Bush*, ¶ 5, 120 P.3d at 179).

[¶15]   Under the substantial evidence standard, a hearing examiner has wide latitude to "determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented," including medical evidence and opinion. *Spletzer v. Wyo. ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo. 2005) (citing *Clark v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 934 P.2d 1269, 1271 (Wyo. 1997)).   This Court will only overturn a hearing examiner's determinations if they are "clearly contrary to the great weight of the evidence." *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 16, 123 P.3d 143, 148 (Wyo. 2005) (quoting *Hurley v. PDQ Transp., Inc.*, 6 P.3d 134, 138 (Wyo. 2000)).   We recognize that a hearing examiner may disregard evidence found to be "evasive, equivocal, confused, or otherwise uncertain." *Id.* (quoting *Krause v. State ex rel. Wyo. Workers' Comp. Div.*, 803 P.2d 81, 83 (Wyo. 1990)).   "If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test." *Dale*, ¶ 22, 188 P.3d at 561.

[¶16]   The arbitrary and capricious standard of review is used as a "safety net" to catch agency action that prejudices a party's substantial rights or is contrary to the other review standards, but is not easily categorized to a particular standard. *Jacobs*, ¶ 9, 301 P.3d at 141.   "The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Id.* "'We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law.'" *Kenyon*, ¶ 13, 247 P.3d at 849 (quoting *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010)).

## DISCUSSION

[¶17]   An employee is eligible for worker's compensation benefits only when he or she is an "employee" as that term is defined by the Wyoming Worker's Compensation Act. The Act defines an employee as:

> any person engaged in any extrahazardous employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written, and includes legally employed minors, aliens authorized to work by the United States department of justice, office of citizenship and immigration services, ***and aliens whom the employer reasonably believes,***

*at the date of hire and the date of injury based upon documentation in the employer's possession, to be authorized to work by the United States department of justice, office of citizenship and immigration services.*

Wyo. Stat. Ann. § 27-14-102(a)(vii) (LexisNexis 2015) (emphasis added).

[¶18]  It is undisputed that the work authorization documents Mr. Gonzalez presented to Reiman were falsified and that he was not in fact legally authorized to work in the United States.  Where the parties disagree is on the question whether Reiman reasonably believed, based on the documentation in its possession, that Mr. Gonzalez was legally authorized to work in the United States.  In this regard, Mr. Gonzalez argues the § 102(a)(vii) language emphasized above requires that, in order for an employer to reasonably believe an employee is authorized to work in the United States, that employer must have in its possession all documentation required by the federal Office of Citizenship and Immigration Services (OCIS) and such documentation must be inspected, completed, and maintained in a manner that complies with all OCIS regulations and requirements of the Immigration Reform and Control Act of 1986 (IRCA) .  Both the OAH and the district court rejected this reading of the § 102(a)(vii) requirement, and we do as well.

[¶19]  We will first address Mr. Gonzalez's statutory interpretation argument.  We will then turn to his argument that the evidence was insufficient to support the OAH conclusion that Reiman reasonably believed he was legally authorized to work based on documentation in its possession.

## A.     Statutory Documentation Requirement

[¶20]  This Court has in two prior decisions rejected the argument that Wyo. Stat. Ann. § 27-14-102(a)(vii) requires federally-compliant documentation to support an employer's reasonable belief that an alien is authorized to work in the United States. *See L & L Enters. v. Arellano (In re Arellano)*, 2015 WY 21, ¶ 16, 344 P.3d 249 at 253 (rejecting argument that fake documentation cannot be basis of employer's reasonable belief); *Herrera v. Phillipps*, 2014 WY 118, ¶ 14, 334 P.3d 1225, 1229 (Wyo. 2014) (rejecting argument that employer must have a properly completed I–9 in its possession to support reasonable belief).  In *Herrera*, we explained:

> The first section of the I–9 is to be filled out and signed by the employee. Mr. Herrera signed the document. Someone else filled in the information on his behalf, although the mandatory "Preparer and/or Translator Certification" was left blank. The second section of the form is to be completed and signed by the employer after examining certain specified

documents relating to the employee's authorization to work in the United States. The second section of Mr. Herrera's I–9 is entirely blank, and contains no signature on behalf of Gilligan's.

Mr. Herrera emphasizes that the statute requires an employer's belief about an employee's authorization to work in the United States to be "based upon documentation in the employer's possession." Wyo. Stat. Ann. § 27–14–102(a)(vii). Because the I–9 is incomplete, he maintains that Gilligan's did not have any documentation in its possession from which it could form any reasonable belief that Mr. Herrera was authorized to work in the United States. On that basis, he asserts that the district court erred in granting summary judgment in Gilligan's favor, and instead should have ruled in his favor on that issue.

Mr. Herrera's argument, taken to its logical limit, is that an employer must have a properly completed I–9 in its possession in order to prove that it had a reasonable belief that an employee is authorized to work. The statutory language does not allow such an interpretation. The statute requires a reasonable belief "based upon documentation in the employer's possession," that an employee is authorized to work. ***The statute does not specify that the documentation in the employer's possession must be a completed I–9, indicating that other documents could also provide the basis for a reasonable belief.***

*Herrera*, ¶¶ 12-14, 334 P.3d at 1229 (emphasis added).

[¶21] As is clear from our reasoning in *Herrera*, we rejected the argument that § 102(a)(vii) requires particular documents, completed in a particular manner, to support an employer's reasonable belief. We emphasized instead that the question of whether the documentation is sufficient to support an employer's reasonable belief is a question of fact, and we accepted that a fact finder could draw different conclusions from the incomplete I-9 that was in the employer's possession in *Herrera*:

However, the fact that Gilligan's did not have a properly completed I–9 for Mr. Herrera, viewed from the vantage point most favorable to Mr. Herrera, is evidence suggesting that Gilligan's did not have a reasonable belief that Mr. Herrera was authorized to work in the United States.

7

The inference can reasonably be drawn that Gilligan's failed to inquire about Mr. Herrera's status, or even that it knew he was not authorized to work in the United States and purposely avoided completing the I–9. Mr. Herrera testified in his deposition that he was not asked to fill out any paperwork when he began working for Gilligan's. He also testified that the supervisor who drove him to the hospital after the injury asked, "You're illegal, aren't you?" According to Mr. Herrera, this question indicates that Gilligan's was aware of his status, and could not have had a reasonable belief that he was authorized to work in the United States.

Gilligan's emphasizes evidence favorable to its position and unfavorable to Mr. Herrera's, including the fact that Mr. Herrera was listed as covered under Gilligan's worker's compensation account. Gilligan's also points out that the incomplete I–9 for Mr. Herrera still includes his signature verifying that he is a lawful permanent alien. Gilligan's contends that this is a document in its possession upon which it based a reasonable belief that Mr. Herrera was authorized to work. Gilligan's also relies on Mr. Herrera's admission that he had a forged alien registration card and a social security card. While Mr. Herrera does not remember presenting this documentation to Gilligan's when he started work, he admits that he had the documents with him at the time. This and other evidence, according to Gilligan's, supports its claim to have had a reasonable belief of Mr. Herrera's status based on documents in its possession. Gilligan's therefore asserts that the district court was correct in granting summary judgment in its favor.

What Gilligan's argument actually establishes, however, is that it has provided sufficient evidence to raise a genuine issue of material fact, precluding summary judgment in favor of Mr. Herrera. But as we have previously discussed, Mr. Herrera has presented evidence conflicting with that of Gilligan's. When "the evidence leads to conflicting interpretations or if reasonable minds might differ, summary judgment is improper." *Jasper v. Brinckerhoff*, 2008 WY 32, ¶ 10, 179 P.3d 857, 862 (Wyo.2008) (citing *Abraham v. Great Western Energy, LLC*, 2004 WY 145, ¶ 12, 101 P.3d 446, 452 (Wyo.2004)). Summary judgment should not have been granted in this case. Genuine issues of material fact

8

exist. At trial, the fact finder must determine whether Gilligan's had a reasonable belief, based on documentation in its possession, that Mr. Herrera was authorized to work in the United States. If the fact finder determines that it did have a reasonable belief, then Mr. Herrera fits within the Wyoming Worker's Compensation Act definition of an employee, and Gilligan's is immune from his claims. If Gilligan's did not have such a reasonable belief, then Mr. Herrera is not an employee under the Wyoming Worker's Compensation Act, and Gilligan's is not immune from his claims.

*Herrera*, ¶¶ 15-17, 334 P.3d at 1229-30.

[¶22] In our subsequent decision in *Arellano*, we discussed the legislative intent underlying the § 102(a)(vii) reasonable belief requirement, and we again declined to add language that would infuse the section with federal documentation requirements.

We find the language of § 27–14–102(a)(vii) to be clear, unambiguous and straightforward. It plainly requires only that an employer reasonably believe, based upon "documentation" in its possession at the date of hire and at the date of injury, that the employee is authorized to work in the United States. The language regarding the authenticity of documents and truth of representations that L & L urges us to read into the statute is simply not there. *Stutzman v. Office of Wyoming State Eng'r*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo.2006) ("We will not insert language into a statute that the legislature omitted.").

Interpreting this statute in any other way would render the language added in 2005 meaningless. *See McTiernan v. Jellis*, 2013 WY 151, ¶ 20, 316 P.3d 1153, 1159–60 (Wyo.2013) (statutes must be construed so that no portion is rendered meaningless and interpretation should not produce an absurd result). If we accepted L & L's argument that Arellano's fake social security card does not qualify as a "document," and that its belief of his status to work in this country cannot be reasonable when false information led to that belief, the language added in 2005 would serve no purpose.

This is so because any alien producing valid written authorization to work in the United States would satisfy the

9

longstanding language of § 27–14–102(a)(vii), which applies to "aliens authorized to work by the United States department of justice, office of citizenship and immigration services...." The language added in 2005—"aliens whom the employer reasonably believes, at the date of hire and the date of injury based upon documentation in the employer's possession, to be authorized to work by the United States department of justice, office of citizenship and immigration services"—would be meaningless, as it would equate to the requirements of the preceding sentence. We are not free to ignore words the legislature used in a statute, and we would have to do so to interpret this language as Appellant argues we should. *In re Guardianship of McNeel*, 2005 WY 36, ¶ 11, 109 P.3d 510, 513 (Wyo.2005) (citing *Keats v. State*, 2003 WY 19, ¶ 28, 64 P.3d 104, 113 (Wyo.2003)).

We believe the legislature intended the result we and the district court have reached, and conclude that the 2005 amendment was intended to protect employers from being sued in tort by illegal aliens who obtained employment using false documents and information. See 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 66.03 (2014) ("Employment of Illegal Aliens"). If illegal aliens believed by their employers to have authorization to work in this country were not employees for workers' compensation purposes, they could sue and recover damages both from the employer and coemployees by proving ordinary negligence. Damages would be limited only by whatever a particular injured employee could persuade a jury to award, while workers' compensation benefits are limited. Paradoxically, therefore, an injured worker who is lawfully in this country could conceivably receive considerably less than a worker who is working illegally could recover in a tort action.

It is most likely that the legislature sought to limit the exposure of employers who reasonably believe an employee is authorized to work here even when he is actually not. A reasonable but mistaken belief would almost necessarily be based on false documents and representations. On the other hand, the legislature evidently intended to expose employers who knew they had hired illegal aliens to tort liability, perhaps as a deterrent.

*Arellano*, ¶¶ 16-20, 344 P.3d at 253.

[¶23] We adhere to our holdings in *Herrera* and *Arellano*. Wyo. Stat. Ann. § 27-14-102(a)(vii) does not incorporate federal requirements that dictate what documents an employer must have in its possession when hiring an alien. Nor does it incorporate federal requirements detailing how those forms must be completed and when and how inspections of those documents must occur. The question the statute imposes for the fact finder is simply whether the documents in the employer's possession, whatever those might be, support the employer's reasonable belief, both at the time of hiring and injury, that the injured employee was legally authorized to work in the United States. As the district court correctly observed:

> With any amount of documentation present, the fact finder can weigh the evidence and determine whether a certain number of documents corroborated by a certain amount of testimony is enough to form the required reasonable belief of authorization.

[¶24] We turn then to whether substantial evidence supports the OAH conclusion Reiman reasonably believed that Mr. Gonzalez was legally authorized to work in the United States at the time of his hiring and injury based on the documents in Reiman's possession.

## B.     Substantial Evidence Supporting Employer's Reasonable Belief

[¶25] The OAH hearing examiner found the testimony of Mr. Gonzalez's superintendants, Dave Brown and Leo Alvarado, to be credible. In contrast, the hearing examiner found Mr. Gonzalez's testimony "to be without credibility in nearly every aspect." Mr. Gonzalez does not contest the deference that must be afforded this determination. In fact, in his opening brief, he concedes that if this Court accepts the view that § 102(a)(vii) does not incorporate federal documentation requirements, "then this appeal can be rejected forthwith, deferring to the OAH credibility determinations." Affording the hearing examiner's credibility determinations the due deference that all parties agree must be afforded those determinations, we conclude, as Mr. Gonzalez anticipated we would, that the OAH's reasonable belief determination is supported by substantial evidence.

[¶26] Reiman superintendant Dave Brown testified that when he hired Mr. Gonzalez in 2007, Mr. Gonzalez showed him both a social security card and a permanent resident card, and he had Mr. Gonzalez complete and sign an I-9, a new hire/rehire report, an employment application and a W-4. Mr. Brown further testified that he saw nothing in Mr. Gonzalez's work authorization documents that caused him to question their

11

authenticity and that he at no time received information that Mr. Gonzalez was not legally authorized to work in the United States.

[¶27] When Reiman superintendant Leo Alvarado hired Mr. Gonzalez in 2008, he did so pursuant to the Reiman policy that allowed the rehire of a former employee without completion of hiring documents, knowing that "all the paperwork was already at the office." The record shows that at that time, Reiman in fact had in its possession Mr. Gonzalez's 2007 employment application, his 2007 new hire/rehire report, and his 2007 W-4. On Mr. Gonzalez's 2007 employment application, he listed his social security number and confirmed that he was authorized to work in the United States. On his new hire/rehire report and his W-4, Mr. Gonzalez likewise listed the same social security number.[3] Finally, Mr. Alvarado testified that he was Mr. Gonzalez's superintendant from 2008 until his date of injury in 2011 and he never received any information or indication that Mr. Gonzalez was not authorized to work in the United States.

[¶28] Based on the documentation in Reiman's possession when Mr. Gonzalez was hired in 2008, we affirm the OAH determination that Reiman had a reasonable belief that Mr. Gonzalez was authorized to work in the United States when it hired him in 2008. In so concluding, we reject Mr. Gonzalez's assertion that Reiman had an obligation to inspect the documents in its possession upon Mr. Gonzalez's rehiring in 2008. By its plain terms, Wyo. Stat. Ann. § 27-14-102(a)(vii) does not impose such an obligation. Reiman hired Mr. Gonzalez pursuant to a rehire policy that presumes possession of the appropriate hiring documents based on the short period between employment termination and rehire. We cannot say that such a policy is per se unreasonable or runs afoul of the statutory documentation requirement.

[¶29] We turn next to the evidence supporting Reiman's reasonable belief of Mr. Gonzalez's work authority on the date of his 2011 work injury. In 2010, Mr. Gonzalez completed an I-9, and at that time he showed Mr. Alvarado his social security card and permanent resident card, both of which Mr. Alvarado believed to be authentic. Thus, at the time of Mr. Gonzalez's 2011 work injury, Reiman had in its possession both the 2007 documents and the 2010 I-9, which listed the numbers from both Mr. Gonzalez's social security and permanent resident cards. Additionally, Reiman filed and had in its possession W-2 forms for Mr. Gonzalez for the years 2008 through 2011. Based on the foregoing, substantial evidence supports Reiman's reasonable belief that Mr. Gonzalez was legally authorized to work in the United States on the date of his 2011 work injury.

---

[3] Reiman does not have in its records the Form I-9 that Mr. Gonzalez completed in April 2007. An internal audit of the Reiman employment files revealed several missing I-9s. Reiman's human resources manager testified that she found no discernible pattern in the missing I-9s, and those missing included some from employees without a hispanic surname, such as Tom Reiman, the company CEO, and Valerie Reiman, the CFO's daughter.

## CONCLUSION

[¶30] The OAH conclusion that Mr. Gonzalez was an employee as defined by the Wyoming Worker's Compensation Act is in accordance with law and supported by substantial evidence. We therefore affirm the district court order affirming the OAH order awarding benefits.[4]

---

[4] Reiman pointed out violations of Rules W.R.A.P. 3.05, 7.01, and 10.01 in the failure of Appellant's counsel to timely designate the portions of the record to which he directed this Court's attention and the failure to attach the required appendices to the brief of Appellant. Because we have affirmed, we do not address this separately raised issue, but we caution counsel to be mindful of these requirements.